Good morning. May it please the court, I am Brian Peterson. I represent the petitioner and appellate C.J. Brigham. We live in interesting times for federal sentencing purposes. This is a federal sentencing appeal resulting from a plea and a sentencing in the District of Oregon. Is it suggesting that what we should do is wait for Booker and Fanfan? I will have a suggestion, I suppose, that will involve something along those lines. What I was starting out with was... That was meant by interesting times. Right. I read my previous briefs on this subject yesterday and the day before when I was preparing for this argument. They almost seem like artifacts of a quaint bygone era because the law on the issues that are involved in this case is unsettled. Whether you call it a sea change, earthquake, catastrophe, or merely a hiccup in terms of what the U.S. Supreme Court is doing, there is no question that as I stand here today, we live in interesting times in terms of federal sentencing issues. There are some issues that were involved in the sentencing in this case that remain issues regardless of what the court does in the Booker and Fanfan cases. There are issues in this case that are, in a sense, substantially different or enhanced because of what this court has done in the Ameline case, interpreting the U.S. Supreme Court's decision in Blakely from June of this year. I'm kind of confused, incidentally, about something in the briefs. I was reading the blue brief and I thought, gee, it sounds like the judge might have made a mistake by measuring the restitution and the amount of loss by how much the defendant took out of the restaurant. But then I look at what the judge did in the sentencing transcript and the judgment, and it looks like he just made his measurement by the amount of loans obtained and the amount of loans applied for or the amount of loss and the amount of attempted loss, respectively. But I might have been confused. There are an awful lot of cases, so educate me. All right. Thank you, Your Honor. That was an interesting issue when I was reading through this as well. Prior to sentencing, both the appellant and the government had been focusing the issue on the case law surrounding the intended loss, whether the loans that were applied for should be measured as the intended loss or whether there was some evidence that the appellant intended to pay it back. I know the government was saying, look at how much he stole from the restaurant, but it didn't look to me like that's what the judge did. I believe that what the judge did at sentencing was essentially adopt the conclusions that had been reached by the United States trustee in a prior bankruptcy proceeding. But didn't the numbers match up to the amount of the loans obtained and the amount of the loans applied for? Well, there were a lot of numbers that were thrown around. I don't mean the numbers thrown around.  I think at sentencing the judge merely said, I find that the amount of loss is in excess of $500,000. I think what he said was the amount of restitution, I think he made it the two loans, and I think he said the amount of loss is in excess of $500,000, and that appeared to be based on the attempted as well as the successful loans. With all respect, I think my conclusion is what the judge did was the United States trustee had prepared a report that was appended to the pre-sentence report and was referred to by the government in this case that concluded independently from the amounts of the loans that based on their examination of the books, such as they were, of the restaurant, that the amount of funds that had been diverted from the restaurant to the appellant's own use were in excess of $500,000. So if I understand the court's question correctly, it was not the sentencing judge saying, I'm picking this loan and that loan as the amount of the loss. He picked the two loans that remained unpaid as the amount for restitution. He chose or adopted what the United States trustee had summarized as the amount that had been diverted from the restaurant to the appellant's own pocket by their conclusion as the measure of the loss. And the issue in this case, one of the interesting issues is that that was not the focus of the party's debate prior to sentencing. There was a number of letters that were exchanged back and forth. Both the government and the appellant had submitted written sentencing recommendations that focused on a very different measure, which is the amounts of the loans and the evidence that showed whether or not the appellant intended to pay those back. Neither side had looked at the issue of what the United States trustee concluded in her own report or addressed the factual questions that were inherent in that, which is essentially out of the hundreds of boxes worth of records that the United States trustee had looked at, this lengthy report that was submitted that included charts and graphs and other appendices. Nobody addressed the factual questions that were inherent in the conclusions that were reached in that report. And I think, Your Honor, that what happened at sentencing in this case is that the appellant's lawyer at sentencing was essentially presented with the judge's conclusion now for the first time that we're going to adopt this report from the United States trustee and left with the Hobson's choice of either trying to cross-examine the person who the government says was quote-unquote available for cross-examination at sentencing or to take the position that he did, which is to say I don't have the means or the obligation to try to duplicate the work of the United States trustee in order to try to undermine the factual questions that are inherent in those conclusions. And, in fact, the issue that's presented to this court on appeal originally was did the court even find by a preponderance of the evidence that that evidence was sufficient to make the sentencing conclusions that he did, namely the amount of the loss. Are you saying that it's not clear from the record whether the judge found as the amount the sum of the loans obtained and the loans applied for or whether the judge found as the amount that the trustee said was taken from the restaurant? Does it affect the result which one it was? I think it does. Your first question, Your Honor, is. Both are over 500. The amount of the loans that the judge chose for the restitution I think were $308,000. And that was the two loans that were obtained, right? I think there were three loans obtained, two for the restaurant and one was a residential mortgage on appellant's own behalf. In any case, I might have mixed that up, but isn't that number just the amount of unpaid loans? The amount that was chosen for restitution was the amounts of the loans that remained unpaid at the time of sentencing. That's correct. Okay. And the amount of loss, what I'm asking you is no matter how you did it, wouldn't it be over 500, whether you used the amount of loans applied for because that's the attempt for determining the guideline level? Very good. The appellant's position at sentencing was that the court should measure the amount of the loss by the intended loss. The argument that he presented in his written submission to the court, the sentencing court, the argument that he made at the sentencing hearing was that the court needed to look at all the evidence that showed these were bona fide loans, this was a bona fide business, that the appellant's intention was to pay the loans back. And so the measure of the loss, I believe their position at sentencing was that it should be in the range of $200,000 or certainly substantially less than what the court eventually concluded. You mean because although the money would have been fraudulently obtained, it was the defendant's intention to pay it back? That was the position of the defendant at the sentencing, Your Honor. That's correct. Counsel, the defendant pled guilty to the indictment. Yes. What did the indictment say about the amount of the losses? I think that the indictment was silent as to the amount of the loss. I believe the indictment, I don't have it before me, Your Honor. Well, isn't that important? If he could only be charged with the amount of loss mentioned in the indictment. No more, no less. That's apprending. The indictment lists the amounts of the loans. My question is, did the trial judge find there were more losses, charged him with more losses than were set forth in the indictment? No. No, I don't believe the trial judge did. All right. So the indictment certainly listed loan amounts. The indictment has, what is it, $700,000 on this one and $133,000 on that one. It has all the loans, right? Right. All right. What about he increased the sentence because the defendant violated a court order? Well, that probably has become the very best issue on the appeal, and that is essentially because of the changes that have taken place in the law. He just pledged. He was never charged with violation of a court order. And a pledge is not a sale. I'm sorry, Your Honor? And a pledge is not a sale. Well, that was our position on the appeal. You pledge a stock or collateral, you're not selling the stock. The interesting issue there is that nobody, not even his lawyers, not even the court, not even the government's lawyers, had considered at the time of the plea that this would be a significant issue. Certainly was not charged in the indictment. He certainly never, ever admitted that to the court at sentencing, either in his plea agreement or in the colloquy at the time of the plea. More importantly than that, it certainly absolutely was never proven to a jury beyond a reasonable doubt. So the issue of whether or not he violated a court order certainly was a significant doubt as to its application, even to the lawyers and the court involved at the time of the plea. And absolutely, it was never admitted by the defendant, and it was never certainly proven to a jury beyond a reasonable doubt. So in a sense... It was not included in the fact that it was not contained in the indictment. Exactly. And was not proven to a jury and was not admitted by the defendant. Well, nobody objected in the trial court, as far as I can tell, to the fact that this was not included in the indictment, and nobody objected that it had to be proved beyond a reasonable doubt to a jury. Am I right? Moreover, in the plea agreement, there was an agreement at the sentencing hearing to substantiate its view of the actual and intended loss. The government would be free to introduce evidence relating to how the loan proceeds were dissipated and how the defendant used the assets of Crouch Street Fish House before and during bankruptcy proceedings relating to that restaurant. I mean, there was an agreement that this is the way the intended loss would be fixed. Two separate issues here, Your Honor. Am I right? As to the amount of the loss, that is exactly what he agreed to at the plea agreement. That's right. More significantly, there was never such an agreement as to the judge being able to find facts with respect to other sentencing issues, such as whether there was a violation of a court order. As to him not objecting at the time to the judge doing fact-finding on the issue of the amount of the loss, who would have thunk, to use a colloquialism at that time, that the law would change as it has in that respect? I would have agreed with you nine years ago until I wrote a decision in the Keys case, and that's exactly what I said. Judge Kleinfeld will remember this well, that we're not going to hold it against the lawyer who didn't object because the lawyer was faced with a solid wall of authority saying there's no reason to object. And so I said, well, based on what we've said, we won't hold it against the lawyer. We're going to review this question on appeal. It went up to the Supreme Court, and I got slapped down by the Supreme Court and told, no, it doesn't work that way. You either object or you lose your opportunity, and now it's reviewable only under plain error. So it was sent back. And so who would have thunk? Not only would nobody have thunk, but the Ninth Circuit has said this is the way it is. Didn't object and got clobbered as a result by the Supreme Court. So I rewrote the Keys case. Judge Kleinfeld will remember that also. And we went the right way. So I was chastised for allowing lawyers to get away with not making objections, even faced with a solid wall of authority that the objection is ridiculous. So here we have a case nobody made an objection. In the Ameline case, this court had said that that met the plain error. It met regular error as well as plain error in the Ameline case. Because of the significant change in the law, they were not going to hold that against the defendant, who now raised this issue of the quantity of the drugs that were involved for sentencing purposes for the first time on appeal. It's not that simple. At the end of the whole Keys affair, what it amounted to was for plain error, it's not enough for it to be wrong. It has to meet all the Olano criteria. Well, in that case, I certainly haven't briefed anything on this issue. I would think that under the reasoning that the court adopted in Ameline, the same would hold true here. That is, plain error that substantially affected the fairness of the proceedings and affected the defendant's rights. In this case, as to the – But you've got another problem. You never raised any of that in your brief. Well – Who would have thunk? Who would have thunk indeed, Your Honor. Thank you. But it's not in the brief. Well, it's – You're stuck with habeas. What's more interesting than that is I'm having significant second thoughts about the issues I even raised in my Rule 28 letter that came out right after – that I wrote right after the Blakeley decision. Because of the way that the courts have interpreted this, because of re-looking at that and some of the issues that are coming up in the Booker and Fanfin cases, and in fact in the United States v. Shepard case, which the U.S. Supreme Court is going to hear argument on, I think a week from yesterday, I think that there are issues that I could not have thought of or did not think of or wouldn't have thought of to raise in the briefs that have come up since then. Now, I'd like to reserve some time if I could. What's the matter with sentencing counsels? That's an excellent question. What's the matter with sentencing counsels, particularly in light of the court's decision in Blakeley, is that they affect the perception of fairness of sentencing. What the Blakeley court said – First of all, let me ask you how the sentencing counsel works. Who is at the sentencing counsel? Does the prosecutor show up in the absence of the defense attorney at the sentencing counsel? No. Does the defense attorney show up in the absence of the prosecutor? No. Are the defense attorney and the prosecutor both there? No. Is the probation officer there? I believe the probation officer is there. You believe? We don't have much of a record in this case. How do you believe the probation officer is there? Well, I may be basing that on the facts that were in the United States versus Sputnik case, which is really probably the best case on point. In a different place. Different place, different type of sentencing counsel. Let me ask you something about sentencing counsels. I never heard of it until this case. When I was a district judge, frankly, we would have regarded it as an impropriety for one of us to suggest to the other what a sentence in a particular case should be. We would have thought of it as an improper ex parte communication. We would discuss these things in a general abstract way, like generally in tax evasion cases we send people to prison because otherwise the incentive would be too great to evade taxes. But we never told each other what we thought sentences should be in a particular case. It didn't look to me as though your brief argued it quite that way as an ex parte communication. I was thinking of that Walter Nixon case, the judge that got impeached in Mississippi, because he told another judge to give somebody's kid a break on a marijuana case. I couldn't find any case in the brief that really looked like it dealt with the problem of a judge receiving ex parte advice from another judge on what the sentence should be. I wasn't worried about the probation officer because that's like your law clerk. He's a staff person within the court whose job it is to assist the court in doing the work preparatory to sentencing. Is there some case I should look at? Well, the Sputnik case is a different situation. That was the Seventh Circuit. That was a judge and a panel of senior probation officers. The reasoning in that case is I think applicable to this case because it talks about the problems of perception that would arise amongst the public and defendants just with the idea that there are sentences foreordained by what happens in the secret council that they're not permitted to attend. There aren't very many cases that discuss sentencing councils. There aren't very many places that have sentencing councils. Exactly. I hadn't heard of this. I think there are four districts in America that have had them at some time. Is that right? That's correct, Your Honor, and every one of those cases that appeared to have resulted from Congress' decision in 1958 to establish a sentencing council authority to study federal sentencing in general and try to have councils or conventions, if you will, where judges could get together informally and try to apply some of the lessons they could learn from sentencing. In practice, in the four districts where this has ever been used in the United States, the purpose has always been a salutary one, to benefit from the judgment and wisdom of other judges. In Alaska, there's a statutory procedure. If a judge takes the state guidelines and they yield a sentence that the judge thinks is unjust or thinks is questionable, the judge can, on his own motion, certify the case to a panel of judges who will substitute for the individual judge to pronounce sentence. It doesn't have the ex parte aspect because what would be like the sentencing council actually is the sentencer. It's not somebody else talking to the sentencer out of school. Nor does it have the completely unscripted situation we have here. The court, Your Honor, had mentioned that there's a procedure in Alaska to do that. There is no procedure in the District of Oregon or any district that I've found evidence of. There's not a standing order or a court rule? I'm sorry? There's not a standing order or a court rule? Not that I've found any evidence of. I assume you looked in the local rules and the local standing orders. The judge announced, by the way, that there was a sentencing council involved in this case. What was the precise nature of the objection made at sentencing to the sentencing council? There was none in this case. That's my point. There was none at all. So where does that put you? Does Blakely require an objection before Blakely applies? I would certainly think prospectively that's something that a lawyer at sentencing or at trial would object to. I think that Blakely can be applied in situations such as appellants without an objection being made at the time. It doesn't require an objection, does it? I would think that in the future it would. On sentencing council, my experience is different than the judge from Alaska. I was a trial judge for 20 years. And if I'd ever suggested to the courts where I was a trial judge that we ought to all get together and talk about sentencing and adopt the Gus Solomon procedure that was used in Oregon, they would have put me out in the juvenile court for 20 years. I wouldn't have had a criminal case. What if you would have suggested, well, we'll do it behind closed doors? Would that be an improvement? And that's exactly the point. However beneficial this was thought to be at the time prior to the formal adoption of sentencing guidelines, this is a practice whose time has passed. Now, particularly in light of the court's decision in Blakely where they disapproved of a lone employee of the state making sentencing decisions that now properly are the province of a jury making a decision beyond a reasonable doubt, I'd submit that it's even more offensive that a secret meeting of state employees could be making sentencing decisions that are not in open court, that are not subject to the lawyer for the defendant being present. And if I could, I would like to. I don't see why the secret is the problem. I mean, we're going to deliberate in secret as soon as we hear the next case and finish for the day. It's the only way you can have useful, honest, open, candid deliberation. The Supreme Court does it. We do it in bank. It happens all the time. Judges get together and decide the case. It's the ex-party aspect that interests me. That's the judges hearing the case. None of the judges will know anything about the case. That's the ex-party aspect, and that's what interests me. I don't see the problem with the secret aspect. But there's no rule on appellate jurisdiction or in the U.S. Supreme Court that provides for the exercise of discretion by a sentencing judge. The rules adopted by Congress in Federal Rule Criminal Procedure 32 provides that the sentencing judge in a criminal case should exercise a discretion. Look, I'm not getting across to you. Here's my concern. I'm deciding. I'm the district judge. I'm deciding what sentence to give the defendant who's going to be coming before me later today. A very influential individual, perhaps my senior on the court, a person to whom I accord considerable deference, tells me, even though it's not his case, he has not had the case before him, and he does not have the responsibility and authority in the case, cases assigned to me, he tells me, you should sentence that person to 100 months to 114 months. It seems to me that I've received an ex-party communication from somebody else that I'm likely to listen to where the lawyers for both sides haven't had a chance to challenge it. But you have not given me a case that says a judge isn't supposed to get that kind of communication or what is supposed to happen if a judge does get that kind of communication. Well, there are very few cases on this subject. Well, it can't be that few. I mean, there may be a few on sentencing counsels because there are hardly any. But on ex-party communications, there's a huge body of authority, I'm sure. I'm sure there is, and I don't think that. I got one my whole time as a district judge. Somebody called me up and asked me to give a relative of his a break, so I just recused myself. It doesn't happen much, but I think everybody has a sense of what to do. In any event, your time has expired. If it would still be possible to take back a minute to rebut after the government has their argument, I would like the opportunity to summarize. We'll consider that. Okay, thank you. May I please the Court? My name is Michael Atkinson, and I represent the United States of America in this case. Let me address the Blakeley issues first. It is true that the district court found three facts that enhanced the defendant's maximum sentence within the meaning of Blakeley. But there are two reasons why the sentence should still be affirmed. First, two of the three facts, namely that the defendant had served 60 days in jail on a prior conviction, and the second fact that he was on probation at the time of the offense, were admitted to by the defendant during the sentencing process. And they fit within the exception in Blakeley and Apprendi. Are they priors? Yes, exactly, for facts related to prior convictions. The third fact that was found by the district court, that the defendant had violated a judicial order in committing the instant offenses, that fact, there's no plain error arising from that fact because there's no dispute. There was no objection? There was no objection. There are no facts. There were no facts presented that would dispute that fact, and there can be no facts presented that would dispute that fact. So under the plain error, even if there's error under Blakeley, and even if it's plain, as the court has already pointed out, there are two other prompts. One, the error had to affect the outcome of the proceedings. The defendant, during sentencing, didn't raise any objection to that fact, that he had violated a judicial order at the time of the offense. It requires an objection? No, it does not require an objection. It does not require an objection, does it? That's true, but. It does not require an objection, does it? True. But what that does, when you. . . So why should we require an objection? I'm not asking you to require an objection. It launches in at a plain error review. Correct. That is the consequence of not raising the objection. And the plain error review puts them in the two prompts. It has to affect the outcome of the proceeding, and it has to seriously affect the fairness of the proceeding. And here, where is the reasonable doubt going to come from? If you vacate the sentence and send it back, and we impanel a sentencing jury to figure out whether the defendant did, in fact, violate the judicial order at the time he committed the offense, where is the reasonable doubt going to come from? You're going to have, even if you have, a different trial or fact and a different standard of proof, the facts don't change. It was in the PSR, in the pre-sentence report, that he violated the court order in committing the incident offense. Well, he's going to say, I didn't sell it and I didn't offer it for sale, I pledged it. And he's going to be stuck with a Supreme Court case, United States v. Rubin, that holds that pledging collateral in connection with a loan is a sale of a security. And he's going to be stuck with a Kendrick's case, this Court's opinion, that pledging collateral for a loan is a sale under Rule 10b-5. He'll never get away from those two cases. So what he's asking you to do is to engage in this academic exercise to send it back to a jury with a higher standard of proof where we're going to have the exact same undisputed and undisputable facts. There's no plain error. Could you talk about what the role was of the amount that he took out of the restaurant for purposes of determining amount of loss? I think we've established that it had no bearing on the restitution. But on amount of loss, how did it relate? It relates to the amount of loss because under the guidelines, the gain is an alternative way to calculate the loss. The United States Sentencing Guidelines Manual, Section 2F1.1, 8. It states that the offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss. And so what the district court judge did was he actually gave the defendant a break because he said, I'm going to – what was your gain from the loans? How much money from the loans did you dissipate from the restaurant and pilfer for your own purposes? And there was record evidence from an assistant United States trustee that the amount pilfered exceeded $600,000. And the defendant did not object to that factual finding, which was also set forth in the pre-sentence report. That's where the loss comes in, and that's how that number relates to the loss. Could you help me with something else? Yes. On the sentencing councils, it may be that we never really get to it because there was no objection made to it. But the ex parte aspect worries me. And since there isn't any statute or anything, I don't know if institutionalization saves it. I'm thinking, suppose the judges of a district announced that before they sentence anyone, what they do is they go to a local coffee shop and chat with five people randomly selected and ask them in a case like this, what would you think the sentence ought to be? Just to get common sense man on the street reaction. I would think even if that were institutionalized, we would probably say they can't do that. And here it's very specific, and it's people who will have real influence on a judge's mind. Why isn't it an impropriety? Because those ex parte concerns exist irrespective of any sentencing council. You'll always have those concerns as long as you have more than one member of the bench in a district. No, you don't. Ordinarily, judges are quite careful not to receive ex parte communications. For example, as I explained to your adversary, we in the District of Alaska when I was there, we would talk generally, but we would never talk specifically to another judge about how that judge ought to resolve a case. And no judge would listen to such conversation had anyone offered it. I accept that. But there's no prophylactic measure other than saying judges can't talk to each other that will prevent that. Usually you wouldn't know about it. Usually you wouldn't know about it, and you just get a mysterious recusal. Because judges are ordinarily honorable about it, and everybody else is honorable too. Here we know about it because it's institutionalized. Your concern seems to emanate from the possibility that there's improper information being given to the sentencing judge. And those concerns are alleviated by, first of all, the sentencing judge's comments on the record, that the sentencing council gives him only an aide. He retains total discretion. Why does that fix it? Suppose I'm a district judge and there's a sentencing council. I now have all the other judges in my district have gotten together to tell me I ought to sentence this particular defendant, in this case, to such and such. So even though I retain the power to do something different, I have to be a maverick to do it. It's a real burden of having received the ex parte communication. I have met a few judges who are afraid to be a maverick, and I think that's important because it's not a cabal of people whose wills can be easily overcome. Why should they receive such communications, though? Why should it even be allowed? Because there will continue to be disparities in sentences. The United States Sentencing Guidelines will never get rid of disparities. And what the sentencing council says, take the case of the loss. You had the defendant saying the loss should be actual loss. You had the government saying the loss should be intended loss. You had the probation office saying the loss should be intended loss. You had all these different legal arguments, and the judge came up with his own decision about, I'm going to take it from the game. Did the judge call up a lawyer that he'd been friends with and respected a lot and who was still in practice that he used to chat with, you know, go down the hall when you have something interesting and difficult to chat about? That would be a much harder case. Let's say you did that as a judge. I had a friend who was a criminal defense lawyer just in town. I would dearly have liked to talk to him sometimes. And I had another friend, a prosecutor, same way. I never did. Could I have? What do you think the sentence should be in this case? I think you, yes. You do? Yes. I would have thought it would be improper, but you think I could. Is there any law in this? I'm not aware of any. The only thing we know about the sentencing council is this. There's an argument about how this whole thing ought to be resolved, and the court says, well, I appreciate that, relating to the lawyer's argument. And this matter was discussed at sentencing council this morning, and it would appear to a number of us that the case cited by Mr. Ungar, the Shaw case, would lead one to this finding and not the McCormick case that the government relies on. So it seems to me that the sentencing council was talking about which case controlled, and the sentencing council decided in favor of the defendant, not the government. Correct, Josh. And that just adds to the problem he has with the plain error standard, because the sentencing council, the one verifiable fact we know about the sentencing council is that it helped the defendant in this case. That's what the judge said. Right. The other thing that we have to keep in mind is that the Ninth Circuit in the United States versus Gonzales in 1985 addressed this district's use of a sentencing council. And although it wasn't asked to determine whether the sentencing council was unconstitutional, it raised no objection to the exact same process that was used by this district almost 20 years ago. Before the guidelines. Correct. That was when at judicial conferences they were puffing the idea of sentencing councils before the guidelines came into existence. It seems the guidelines, whatever concerns there may have been about ex parte communications, the guidelines mitigate those concerns. They don't exacerbate them. Think about what the guidelines have done and how it constrains a district court judge. The guidelines require, now require, after Gonzales, that any range has to be determined based on objective evidence, objective factors, based on reliable evidence. Let me give you another hypothetical case. Okay. Can Sark Chambers be acquainted in any degree? I'm sorry? Can sentencing councils be acquainted in any degree with Sark Chambers? No. Why not? Because. No degree whatsoever? Absolutely not. The secrecy? Secrecy is a part of the judicial system. Secrecy is an accepted part of the judicial system? Sure. Where did you learn that? The last jury trial I had, the jury deliberated in secret. I don't mean to be facetious. You don't have to have lawyers then to come before you and juries to decide facts? You can do it in secret? Judges? You can do it in secret? You don't have to have juries and lawyers to decide cases? I must have misunderstood your question, Judge. My only point is that secrecy exists in many different respects in our judicial system. And the problem with Sark Chambers is that people were operating outside the law. The evidence in this case is that the sentencing court aided the judge and every fact he found was in the pre-sentence report. The guideline range he reached was within the appropriate guideline. There's nothing he did, there's nothing the district court did outside the bounds of the law. Sentencing councils don't bring any pressure upon the individual judge's sentence in a particular way? Not according to the chief judge. In order to achieve uniformity or for some other reason? Not according to the chief judge. Well, why have them then if they're useless? Because they're not useless, Judge. They can influence him, and they can tell him what to do. They can suggest what to do. But the assumption there is that the judge – Bring organized pressure on him, institutional pressure on him. The assumption is the judge was going to do something right, and the sentencing council is making him do something wrong. Let me address the good part of sentencing councils, the movement toward uniformity that was the reason for them before the guidelines. The reason why some people were suggesting them before the guidelines. I'm thinking, let's say I get my first – I'm a new district judge, I get my first bank robbery with a gun, no shots fired. Natural thing to want to know, which I in fact did want to know at the time, is what's the going rate for robbery with a gun, no shots fired, over in the state superior court? They get a whole lot more of them than we do in federal court. So I want to know, can I call up my friend, the local district attorney and ask him? Can I call up my friend who, in my opinion, is the best criminal defense lawyer in town and ask him? Can I call up my friend who's the presiding judge over at the state superior court and ask him? Small town, this is real. They really are friends. It seems to me like three unethical acts that I've just committed if I make those phone calls, and I can't figure out where the sentencing council is different except that they're on my court. Those people will give you public information. They will tell you, in response to your hypothetical, they'll tell you. They'll give me disputable public information. I mean, each one says what he thinks the going rate is, and some lawyer might very much want to argue about it. And you can go to the public records and determine whether they're right. Is that the real sentence? That's what these sentences are. It would be a great disservice to say that sentencing councils, there's no need for them because the guidelines have brought this uniformity. There's no longer any disparity. That would be a great disservice to say that some junior judge can't take advantage of a more senior judge and his experience. Gonzales seems to embrace the concept and finds nothing wrong with it. Correct. And there's no evidence that anything was done wrong here. You had complicated issues about, I'm sorry. Congress, when it established the sentencing guidelines, they put everything down on paper. But the sentencing councils, we don't know what they're saying, what they're doing, what kind of pressures they're bringing. And can we have justice under that kind of a system? Yes, you can. See, the problem is you've had sentencing councils in Oregon for 40 years, and there's an old saying that you like what you get used to. And you guys are used to it, and you don't want to get rid of it. Do you like sentencing councils? You know, I'm actually from Washington, D.C., working out of Maine Justice. I've never heard of them before. I didn't like the sentencing council in this case because it helped the defendant. And I share Judge Ferguson's experience, having traveled around to different districts. There are many districts, in my experience, where you can't get five district court judges to sit in the same room together to discuss sentencing. But that's just, there's nothing wrong with it. These are very serious issues that these judges are being asked to consider. Questions about a person's liberty. And why would you take away a source of information for them when they don't have to listen to the information? They don't have to agree with the information. All they're doing is trying to figure out how can I do justice fairly, evenly, and equally. What is wrong with that? Nothing happened wrong here. There are four facts that this defendant claims the sentencing council hurt him with. Your ears should be open in the judicial system to the public. You listen to lawyers. You listen to experts. And you listen to questions asked by a jury or somebody else. And your ears should be closed to outside influences. And a sentencing council is a secret outside influence that you don't know anything about, I don't know anything about, and nobody in this courtroom knows anything about what they do. Now, is that the system of justice that you think we should have in America? Yes. Okay. Because I'll tell you, that system exists whether you call it a sentencing council or not. It strains credulity to say that district court judges aren't talking to each other about complicated sentencing matters. It's illogical, it's irrational for a judge who's going to make a life and death decision to say, I'm not going to go to the office next door. I'm not going to talk to another judge. At least in the District of Oregon, the procedure has been in place for 40 years. It's understood by the practitioners. If there's a question, an objection, it can be raised. It wasn't. Your time has expired. Thank you. Thank you. We appreciate your help. The sentencing council has just left the courtroom. Could I renew my request to have one minute to the end? Sure. One minute and that's it. All right. Justice Kleinfeld asked at the beginning what was my suggestion. And I said I would give you my suggestion, my request. Certainly the U.S. Supreme Court's decisions in the Booker and the Fanfan case and the Shepard case, which may address the issue of whether the Almendarez-Torres decision survived lightly, the decision about a prior conviction or facts related to the prior conviction. This court's decision and what happens in the future in Appellant's case is going to be informed by all those decisions. What we know is that as the Ninth Circuit law stands right now, Appellant should be resentenced on at least the issue of whether or not he violated a court order because that appears to be a clear violation of Blakely as well as Ameline. What I would suggest is that the matter be sent back for resentencing without the influence of the sentencing council and with the opportunity for the appellant to raise some of these factual issues about the application of Blakely in the new U.S. Supreme Court cases. I don't think you'd want the council. It would help you. Well, in that sense. The council helped you here. Well, what's interesting is the council says you win. Well, what's interesting is the council says you win on the issue that had been framed by the government and the defendant prior to sentencing. The council says you win on that. But the sentencing judge says I'm going to do something different. So in that sense, it appears that not only did the sentencing council side with the defendant, but it had no influence on the sentencing judge. So no harm, no foul. As to the little tiny fragment of information we have about what happened in the sentencing council. See, that's the problem with not making an objection. That's the problem with not objecting. And I have to apologize for cutting you off, but we will be in recess for ten minutes. The case just argued is ordered to submit. Thank you very much.
judges: Ferguson, Trott, Kleinfeld